UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THURMAN KING,                                     Case No. 1:21-cv-259

      Plaintiff,                                  HON. JANE M. BECKERING

v.

CITY OF ROCKFORD;
ROCKFORD DEPARTMENT OF PUBLIC SAFETY;
OFFICER ZACHARY ABBATE (individually);
OFFICER JASON BRADLEY (individually);
LIEUTENANT AARON SAWYER (individually); and,
CHIEF GLENN DAVID ROBINSON (individually),

      Defendants.

_____/

| | |
|---|---|
| Stephen R. Drew (P24323) | Michael S. Bogren (P34855) |
| Adam C. Sturdivant (P72285) | Robert A. Callahan (P47600) |
| DREW COOPER & ANDING | Charles L. Bogren (P82824) |
| Attorneys for Plaintiff | PLUNKETT COONEY |
| 80 Ottawa Avenue NW, Suite 200 | Attorneys for Defendants |
| Grand Rapids, Michigan 49503 | 333 Bridge Street NW, Suite 530 |
| Phone: (616) 454-8300 | Grand Rapids, Michigan 49504 |
| E-mail: sdrew@dca-lawyers.com | Phone: (616) 752-4600 |
| E-mail: asturdivant@dca-lawyers.com | E-mail: mbogren@plunkettcooney.com |
| | E-mail: rcallahan@plunkettcooney.com |
| | E-mail: cbogren@plunkettcooney.com |

_____/

**FIRST AMENDED COMPLAINT
AND RELIANCE ON JURY DEMAND**

## COMPLAINT AND JURY DEMAND

Plaintiff Thurman King, by and through his attorneys DREW COOPER & ANDING, alleges and states as follows:

## JURISDICTION

1.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded upon 28 U.S.C. § 1331 and § 1343(a) (1), (2), (3), and (4) and the aforementioned statutory and constitutional provisions, as this action seeks redress for the violation of Plaintiff's constitutional and civil rights

2.  Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

3.  The claims brought are cognizable under the United States Constitution and 42 U.S.C. § 1923 and under Michigan Law.

4.  Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

5.  The amount in controversy exceeds $75,000.00 excluding interest and costs.

## PARTIES

6.  Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

7.      Plaintiff Thurman King is a 55-year-old African American citizen of the United States and was at all relevant times a resident of the City of Rockford in the County of Kent, State of Michigan (hereinafter "Plaintiff").

8.      Defendant City of Rockford is a municipal corporation located in the County of Kent, State of Michigan, and is a governmental body organized and existing under the constitution and laws of the State of Michigan and conducting business within the territorial limits of the United States District Court of the Western District of Michigan.

9.      Defendant Rockford Department of Public Safety is a department of Defendant City of Rockford, and is a governmental body organized and existing under the constitution and laws of the State of Michigan and conducting business within the territorial limits of the United States District Court of the Western District of Michigan.

10.     Defendant Zachary Abbate, an officer for the City of Rockford Department of Public Safety, was at all relevant times an agent, employee, or representative of Defendants City of Rockford and/or Rockford Department of Public Safety and is sued individually.

11.     Defendant Jason Bradley, an officer for the City of Rockford Department of Public Safety, was at all relevant times an agent, employee, or representative of Defendants City of Rockford and/or Rockford Department of Public Safety and is sued individually.

12.     Defendant Aaron Sawyer, a lieutenant for the City of Rockford Department of Public Safety, was at all relevant times an agent, employee, or representative of Defendants City of Rockford and/or Rockford Department of Public Safety and is sued individually.

13.     Defendant Glenn David Robinson, a chief for the City of Rockford Department of Public Safety, was at all relevant times an agent, employee, or representative of Defendants City of Rockford and/or Rockford Department of Public Safety and is sued individually.

14.     At all relevant times, Defendants were acting under color of law, including under color of

the statutes, ordinances, regulations, policies, customs, and usages of the City of Rockford,

County of Kent, State of Michigan.

## FACTUAL ALLEGATIONS

15.     Plaintiff realleges and incorporates by reference the allegations contained in the previous

paragraphs.

16.     This is an action for money damages against Defendant City of Rockford, Defendant

Rockford Department of Public Safety, Defendant Abbate, individually, Defendant Jason

Bradley, individually, Defendant Sawyer, individually, and Defendant Robinson,

individually, for violating Plaintiff's constitutional rights and other rights accorded him

by common and statutory law.

17.     On March 20, 2019, at approximately 11:00 p.m. Plaintiff was driving in the city of

Rockford toward his residence.

18.     Defendant Abbate, who was on duty, began following Plaintiff in his service vehicle.

19.     Plaintiff was not driving under the influence of alcohol, illegal drugs, or prescription drugs.

20.     Plaintiff, while traveling northbound on River Street, came to a full stop at a stop sign

located at the intersection of Bridge Street and River Street.

21.     Despite the fact that Plaintiff had not committed any observable traffic violations,

Defendant Abbate began following Plaintiff's vehicle.

22.     After coming to a full stop at the intersection of Bridge Street and River Street, Plaintiff

kept traveling in his vehicle toward his residence.

23.     At some point, Defendant Abbate activated his light.

24.    Unsure of why the police were following him, Plaintiff parked his vehicle at his residence and exited his vehicle.

25.    Upon initial contact with Plaintiff, Defendant Abbate stated Plaintiff, "You know I know you, right."

26.    Defendant Abbate stated to Plaintiff that he was pulling Plaintiff over for having an inoperable license plate light and for failing to come to a complete stop at the stop sign located at the intersection of Bridge Street and River Street.

27.    Recalling that he had made a full stop, Plaintiff became fearful of the officer's intent and what was going to transpire because Defendant Abbate was being untruthful about Plaintiff's driving behavior.

28.    Defendant Abbate's police vehicle was equipped with a dash cam.

29.    The alleged inoperable license plate light was not visible on Defendant Abbate's dash camera.

30.    However, the dash cam recording does show that Plaintiff's vehicle came to a full stop at the intersection of Bridge Street and River Street.

31.    Defendant Abbate also accused Plaintiff of smelling like marijuana and requested that Plaintiff submit to a chemical test.

32.    Plaintiff refused the chemical test.

33.    At some point, Defendant Bradley arrived on scene while Defendant Abbate was questioning Plaintiff.

34.    Given the presence of two officers, and the allegations that Defendant Abbate was lodging against Plaintiff, Plaintiff became even more fearful and attempted to yell for his fiancée who was in their residence.

35.   Defendants Abbate and Bradley grabbed Plaintiff and swung him around, preventing him from yelling for his fiancée.

36.   Plaintiff was then thrown to the ground of his driveway by Defendants Abbate and Bradley.

37.   Plaintiff was seized and detained by Defendants Abbate and Bradley.

38.   Defendants Abbate and Bradley took Plaintiff to the Kent County Jail where he was unlawfully detained for approximately 14 hours.

39.   While he was detained at the Kent County Jail, Plaintiff submitted to a blood draw.

40.   The results of the blood draw revealed that there was no alcohol in Plaintiff's system and a very small amount of THC in his system on the date of the traffic stop and seizure.

41.   Upon release from the Kent County Jail, Plaintiff sought treatment at an emergency room where he was diagnosed with a head injury, left elbow sprain, abrasion, and neck strain.

42.   Defendants Robinson and Sawyer both reviewed the video tape of the traffic stop that demonstrated that the alleged basis given by Defendant Abbate was false and that there was no evidence of the Plaintiff driving under the influence or alcohol or drugs.

43.   Instead of dismissing all matters against the Plaintiff after seeing that the basis for the traffic stop was a pretense and false, Defendants Robinson, Sawyer and Abbate continued to proceed with actions to charge the Plaintiff with crimes and cover up and/or ignore the false traffic stop that had occurred.

44.   On May 9, 2019, Plaintiff was charged criminally with one felony and two misdemeanors including:

   a)   Assaulting/Resisting/Obstructing a Police Officer (Felony);
   b)   Operating a Motor Vehicle While Intoxicated (Misdemeanor); and,
   c)   Alcohol-Open Container in Vehicle (misdemeanor).

45.   Plaintiff pleaded not guilty to all charges.

5

46.     Plaintiff was forced to hire a criminal defense attorney to defend the unlawful and unwarranted criminal charges against him.

47.     In approximately late June 2019, the Kent County Prosecutor's Office reviewed the dash camera footage of Plaintiff's unlawful arrest.

48.     On July 2, 2019, the Kent County Prosecutor's Office filed a Motion of Nolle Prosequi and moved to dismiss the criminal charges in the "interest of justice."

49.     The Motion was granted, and all criminal charges were dismissed on July 2, 2019.

50.     At the time of Plaintiff's stop, Defendants City of Rockford and Rockford Department of Public Safety had in place a policy in which all officers were required to conduct two mandatory traffic stops, at a minimum, during every 10-hour shift ("mandatory two traffic stop policy").

51.     All officers of Defendants City of Rockford and Rockford Department of Public Safety, including Defendants Abbate and Bradley, were subject to the mandatory per shift two traffic stop policy.

52.     An officer's failure to meet Defendants City of Rockford and Rockford Department of Public Safety's two traffic stop policy resulted in the threat of and/or disciplinary action by Defendants Robinson and Sawyer, which included, but were not limited to, verbal and written discipline.

53.     On February 4, 2019, Defendant Abbate received a counseling memo from Defendants Robinson and Sawyer in which he was being reprimanded for his failure to meet the mandatory minimum expectations of two traffic stops per shift for traffic stops in December 2018.

54.   The goal for the mandatory minimum expectations for traffic stops in December 2018 for Defendant Abbate was a mandatory two traffic stops per shift and/or a mandatory 28 traffic stops for the month.

55.   Defendant Abbate conducted 27 traffic stops for the month of December 2018, yet still was brought in on or about February 4, 2019, and threatened with discipline and was advised that he would be watched very closely over the next several months.

56.   On February 5, 2019, the day after receiving the counseling memo from Defendants Robinson and Sawyer, Defendant Abbate upon information and belief conducted a false stop of a Hispanic man for failing to stop at an intersection or coming to a complete stop and having a defective brake light.

57.   Under Michigan law, it is unlawful to require a police officer to issue a predetermined or specified number of traffic citations and no police officer's performance evaluation should be predicated on the number of issued citations (MCL § 257.750).

58.   Defendant Abbate conducted the unlawful stop of Plaintiff King in an effort to meet the mandatory minimum traffic stop requirement of the practice, custom, policy and procedure promulgated and set forth by Defendants City of Rockford and Rockford Department of Public Safety and enforced by Defendants Robinson and Sawyer.

59.   As a result of the unlawful stop, Plaintiff was unreasonably seized at his residence which led to an escalation of events and Plaintiff's false arrest.

60.   As a result of the unlawful stop, which led to Plaintiff's false arrest, Plaintiff was unlawfully incarcerated.

61.   As a result of the unlawful stop and seizure, false arrest, and related criminal prosecution, Plaintiff missed approximately 45 days of work resulting in wage loss.

62.     As a result of the false arrest and related criminal prosecution, Plaintiff was also forced to pay a fine for his refusal to take a chemical test.

**COUNT I**
**42 U.S.C. § 1983**
**FALSE ARREST/FALSE IMPRISONMENT**
**DEFENDANTS ABBATE AND BRADLEY**

63.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

64.     Plaintiff has a clearly established right under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable seizures of his person.

65.     Plaintiff was stopped for an alleged routine traffic violation.

66.     The alleged traffic violations were unsubstantiated by video (dash cam) evidence.

67.     Defendants' unreasonable seizure of Plaintiff after an unlawful and unsubstantiated stop escalated events that transpired which led to Defendants Abbate and Bradley arresting Plaintiff without probable cause or a reasonable belief that Plaintiff was committing a crime.

68.     With Defendant Abbate and/or Bradley's knee and body weight on Plaintiff's back with him face down on the concrete and telling the Defendants over and over that "I can't breathe", Defendant Bradley sarcastically said "If you can talk you can breathe".

69.     Defendants Abbate and Bradley's acts were objectively unreasonable.

70.     On March 20, 2019, Defendants Abbate and Bradley acted in a deliberate, grossly negligent, and/or reckless manner when they executed a false, stop (Defendant Abbate), seizure, and arrest (Defendants Abbate and Bradley) against Plaintiff.

71.     Defendants Abbate and Bradley, in subjecting Plaintiff, to the false stop (Defendant Abbate), seizure, and arrest (Defendants Abbate and Bradley) and the deprivations of his constitutional

and federal rights maliciously, acted with callous or reckless disregard, and deliberate indifference as to whether Plaintiff's rights would be violated by their actions.

72.    As a direct and proximate result of Defendants' actions, Plaintiff was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

73.    As a direct and proximate result of the aforementioned actions and inactions by Defendants, Plaintiff sustained injuries including but not limited to, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, loss of wages, and other damages known and unknown.

**COUNT II**
**42 U.S.C. § 1983**
**MUNICIPAL LIABILITY**
**DEFENDANTS CITY OF ROCKFORD AND**
**ROCKFORD DEPARTMENT OF PUBLIC SAFETY**

74.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

75.    This count is alleged against Defendants City of Rockford and Rockford Department of Public Safety

76.    Defendants City of Rockford and/or Rockford Department of Public Safety have the ultimate responsibility and authority to train and supervise officers of the City of Rockford Department of Public Safety regarding the appropriate policies and procedures to use to execute a traffic stop.

77.    Defendants City of Rockford and/or Rockford Department of Public Safety have the ultimate responsibility and authority to train and supervise officers of the Rockford Department of

Public Safety regarding the appropriate policies and procedures to implement to reduce and eliminate implicit or unconscious bias.

78.     Defendants City of Rockford and/or Rockford Department of Public Safety have the ultimate responsibility and authority to train and supervise officers of the Rockford Department of Public Safety regarding the appropriate policies and procedures to use to reduce and eliminate racial profiling.

79.     Defendants City of Rockford and/or Rockford Department of Public Safety has the ultimate responsibility and authority to investigate the false stop, seizure, and arrest of Plaintiff and the circumstances leading to his false arrest including all those involved such as Defendants Abbate and Bradley.

80.     Defendants City of Rockford and/or Rockford Department of Public Safety as a matter of custom, policy and and/or practice, failed to adequately and properly investigate the false stop, seizure, and arrest of Plaintiff and failed to perform a thorough investigation into all the events relating to the false arrest and any other constitutional, statutory, or common law violations of Plaintiff's rights.

81.     Defendants City of Rockford and/or Rockford Department of Public Safety, tolerated, authorized and/or permitted a custom, policy, practice and/or procedure of using traffic stops in an improper manner so as to bully, harass, or otherwise inconvenience private citizens.

82.     Defendants City of Rockford and/or Rockford Department of Public Safety promulgated, tolerated, authorized and/or permitted a custom, policy, practice and/or procedure that required its officers to conduct two mandatory traffic stops, at a minimum, per 10 hour shift.

83.   Defendants City of Rockford and/or Rockford Department of Public Safety, tolerated, authorized and/or permitted a custom, policy, practice and/or procedure of improper stops and stops based on racial profiling.

84.   Defendants City of Rockford and/or Rockford Department of Public Safety, tolerated, authorized and/or permitted a custom, policy, practice and/or procedure of improper stops and stops based on implicit or unconscious bias.

85.   Defendants City of Rockford and/or Rockford Department of Public Safety failed to thoroughly review and investigate all policies, practices, procedures, and training materials related to the circumstances surrounding the false stop, seizure, and arrest of Plaintiff.

86.   Defendants City of Rockford and/or Rockford Department of Public Safety failed to train its officers, including Defendants Abbate and Bradley regarding the aforementioned policies.

87.   Defendants City of Rockford and/or Rockford Department of Public Safety is liable for the damages Plaintiff suffered as a result of the conduct of their employees, agents, and servants, in that after learning of their employees' violation of Plaintiff's constitutional rights, they failed to remedy the wrong.

88.   Defendants City of Rockford and/or Rockford Department of Public Safety created a policy or custom under which unconstitutional practices occurred and were allowed to continue.

89.   Defendant Abbate's actions on March 20, 2019, in making the traffic stop of the Plaintiff for false reasons and when there was no probable cause and filing false information and affidavits to justify the stop and arrests incident to the stop were in whole or in part a result of the promulgated and authorized policy, practice, custom or policy of mandatory two traffic stops per shift and the threatened discipline for violation of this policy.

90.   Defendants City of Rockford Department of Public Safety have been grossly negligent in managing subordinates who caused the unlawful condition or event, including the false stop, seizure, and arrest of Plaintiff.

91.   Defendants City of Rockford and/or Rockford Department of Public Safety are responsible for the violation of Plaintiff's constitutional rights because Defendants City of Rockford and/or were deliberately indifferent to a custom, pattern, practice, or policy of allowing officers to racially profile citizens, exhibit implicit or unconscious bias, execute unlawful or unwarranted traffic stops, or otherwise engage in conduct resulting in the violation of constitutional, statutory, or common law rights of private citizens.

92.   Defendants City of Rockford and/or Rockford Department of Public Safety are responsible for the violation of Plaintiff's constitutional rights because Defendants City of Rockford and/or Rockford Department of Public Safety were deliberately indifferent in failing to train, supervise, and discipline officers, including Defendants Abbate and Bradley, who engage in such aforementioned misconduct.

93.   By the aforementioned actions and/or inactions, Defendants City of Rockford and/or Rockford Department of Public Safety, as a matter of custom, policy and practice, deprived Plaintiff of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution as well as violations under 42 U.S.C. § 1983.

94.   As a direct and proximate result of Defendant's actions, Plaintiff was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

95.   As a direct and proximate result of the aforementioned actions and inactions by Defendants, Plaintiff sustained injuries including but not limited to, mental anguish, fright,

shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, loss of wages, and other damages known and unknown.

**COUNT III**
**42 U.S.C. § 1983**
**SUPERVISORY AND/OR INDIVIDUAL LIABILITY**
**DEFENDANTS ROBINSON AND SAWYER**

96.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

97.    Defendants Robinson and Sawyer enforced a policy that required its officers to make, at a minimum, 2 traffic stops for every 10-hour shift.

98.    The officers of Defendants City of Rockford and Rockford Department of Public Safety, including Defendants Abbate and Bradley, were subject to the mandatory two traffic stop policy.

99.    In the event that an officer failed to meet the required number of stops per month, Defendants Robinson and Sawyer would issue written and/or verbal memos imposing and/or threatening to impose discipline of the officer.

100.   On or about February 4, 2019, Officer Abbate was called into a meeting with Defendant Sawyer and received a counseling memo from Defendants Robinson and Sawyer in which he was reprimanded for his failure to meet the mandatory minimum requirements for traffic stops in December 2018 and told he would be watched very closely during the next several months all because he was one short of the minimum required traffic stop goal for December.

101.   The goal for the mandatory minimum expectations for traffic stops in December 2018 was 28 traffic stops. Defendant Abbate conducted 27 traffic stops.

13

102.    Due to the pressure from the February 4, 2019, memo and meeting, Defendant Abbate, on February 5, 2019, upon information and belief performed a stop of a Hispanic man for allegedly failing to stop at an intersection or coming to a complete stop and having a defective brake light.

103.    Due to continued pressure by Defendants Robinson and Sawyer to meet the department mandated two-stop quota, Defendant Abbate, on March 20, 2019, performed a false stop and subsequent false arrest of Plaintiff Thurman King.

104.    Defendants Robinson and Sawyer harassed and pressured Defendant Abbate to meet the mandatory minimum expectations for traffic stops or risk further discipline (in violation of the spirit and intent, if not the letter of the law of M.C.L. § 257.750) resulting in Defendants Abbate and Bradley interfering with Plaintiff's property and liberty interests.

105.    Defendants Robinson and Sawyer both viewed the video tape of the traffic stop that clearly demonstrated that the Plaintiff had stopped at the intersection and that he was not driving under the influence of alcohol or drugs.

106.    After viewing the tape, instead of dismissing the pending charges against the Plaintiff and/or disciplining the Defendant Abbate for making a false or pretextual stop of the Plaintiff, Defendants Robinson and/or Sawyer acted to cover up the false acts and support their policy of mandatory traffic stops per shift by indicating that they could not tell from the tape whether Plaintiff stopped at the intersection.

107.    The Plaintiff on or about March 22, 2019 had also filed a citizens complaint indicating that he had been stopped for false reasons and that excessive force was used by Defendants Abbate and Bradley.

108.  By the aforementioned actions and/or inactions, Defendants Robinson and Sawyer caused Plaintiff to be charged with felony and misdemeanor charges on May 9, 2019 further depriving Plaintiff of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution as well as violations under 42 U.S.C. § 1983.

109.  As a direct and proximate result of Defendants' actions, Plaintiff was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

110.  As a direct and proximate result of the aforementioned actions and inactions by Defendants, Plaintiff sustained injuries including but not limited to, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, loss of wages, and other damages known and unknown.

**COUNT IV**
**42 U.S.C. § 1983**
**SUBSTANTIVE DUE PROCESS**
**ALL DEFENDANTS**

111.  Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

112.  In practice, Defendants City of Rockford and/or Rockford Department of Public Safety have used its officers to bully, harass, and deprive private citizens of their civil liberties.

113.  Defendants City of Rockford and/or Rockford Department of Public Safety used Defendants Abbate and Bradley to interfere with Plaintiff's property interest and his liberty interest which entitle Plaintiff the right to bodily integrity.

114.    Defendants' conduct, either in their individual or collective acts to this abusive environment, caused Plaintiff to be detained unlawfully under the color of law grossly depriving him of fundamental liberty interests.

115.    In addition to the violations of Plaintiff's liberty interests, Defendants also denied Plaintiff an opportunity to call his fiancée when he was taken into custody, depriving Plaintiff of additional Due Process rights.

116.    Defendants have ignored procedural and substantive Due Process requirements in an unlawful campaign to harass, punish, and bully private citizens who they suspect of minor traffic violations/criminal activities despite an absence of probable cause and evidence.

117.    The municipal Defendants have trained their officers and have implemented a policy of transforming ordinary traffic stops into invasive searches and seizures, flouting constitutional requirements related to private property and liberty interests.

118.    Defendants' actions intentionally and willfully deprived Plaintiff of his property interests and Plaintiff's liberty interests without due process of law and without recourse for the arbitrary, abusive, and harassing, conduct of Defendants.

119.    Defendants' actions proximately caused damages to Plaintiff as previously and subsequently alleged.

120.    Defendants acted willfully, knowingly and/or purposefully, and with deliberate indifference to deprive Plaintiff of his constitutional rights.

121.    Due to the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

122. As a direct and proximate result of Defendants' actions, Plaintiff was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

123. As a direct and proximate result of the aforementioned actions and inactions by Defendants, Plaintiff sustained injuries including but not limited to, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, loss of wages, and other damages known and unknown.

## SUPPLEMENTAL STATE LAW CLAIMS

### COUNT V
### MICHIGAN CONSTITUTION ARTICLE I, § 11
### FALSE ARREST
### DEFENDANTS ABBATE AND BRADLEY

124. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

125. Plaintiff has a clearly established right under the Michigan Constitution to be free from unreasonable seizures of his person.

126. Plaintiff was stopped for an alleged routine traffic violation.

127. Defendant Abbate stopped Plaintiff without probable cause or a reasonable belief that Plaintiff was committing a crime.

128. Defendants Abbate and Bradley seized and arrested Plaintiff without probable cause or a reasonable belief that Plaintiff was committing a crime.

129. Defendants Abbate and Bradley's acts were objectively unreasonable.

130.    On March 20, 2019, Defendants Abbate and Bradley acted in a deliberate, grossly negligent, and/or reckless manner when they executed a false stop (Defendant Bradley), seizure, and arrest (Defendants Abbate and Bradley) against Plaintiff.

131.    Defendants Abbate and Bradley, in subjecting Plaintiff, to the false stop (Defendant Bradley), seizure, and arrest (Defendants Abbate and Bradley) and the deprivations of his constitutional and federal rights maliciously, acted with callous or reckless disregard, and deliberate indifference as to whether Plaintiff's rights would be violated by their actions.

132.    As a direct and proximate result of Defendants' actions, Plaintiff was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

133.    As a direct and proximate result of the aforementioned actions and inactions by Defendants, Plaintiff sustained injuries including but not limited to, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, loss of wages, and other damages known and unknown.

**COUNT VI**
**MICHIGAN CONSTITUTION ARTICLE I, § 17**
**DUE PROCESS**
**ALL DEFENDANTS**

134.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

135.    In practice, Defendant City of Rockford and/or Rockford Department of Public Safety have used its officers to bully, harass, and deprive private citizens of their civil liberties.

136.     Defendants City of Rockford and/or Rockford Department of Public Safety used Defendants Abbate and Bradley to interfere with Plaintiff's property interest and his liberty interest which entitles Plaintiff the right to bodily integrity.

137.     Defendants' conduct, either in their individual or collective acts to this abusive environment, caused Plaintiff to be detained unlawfully under the color of law grossly depriving him of fundamental liberty interests.

138.     In addition to the obvious violations of Plaintiff's liberty interests, Defendants also denied Plaintiff an opportunity to call his fiancée when he was taken into custody, depriving Plaintiff of additional Due Process rights.

139.     Defendants have ignored procedural and substantive Due Process requirements in an unlawful campaign to harass, punish, and bully private citizens who they suspect of minor traffic violations/criminal activities despite an absence of probable cause and evidence.

140.     The municipal Defendants have trained their officers and have implemented a policy of transforming ordinary traffic stops into invasive searches and seizures, flouting constitutional requirements related to private property and liberty interests.

141.     Defendants' actions intentionally and willfully deprived Plaintiff of his property interests and Plaintiff's liberty interests without due process of law and without recourse for the arbitrary, abusive, and harassing, conduct of Defendants.

142.     Defendants' actions proximately caused damages to Plaintiff as previously and subsequently alleged.

143.     Defendants acted willfully, knowingly and/or purposefully, and with deliberate indifference to deprive Plaintiff of his constitutional rights.

144.   Due to the nature of Defendants' conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

145.   As a direct and proximate result of Defendants' actions, Plaintiff was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

146.   As a direct and proximate result of the aforementioned actions and inactions by Defendants, Plaintiff sustained injuries including but not limited to, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, loss of wages, and other damages known and unknown.

<u>**COUNT VII**</u>
<u>**NEGLIGENCE**</u>
<u>**DEFENDANTS ABBATE AND BRADLEY**</u>

147.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

148.   Defendants Abbate and Bradley had a common law duty to act reasonably at all times when they were interacting with Plaintiff on March 20, 2019.

149.   Defendant Abbate and Bradley failed to act reasonably as they carried out their tasks and responsibilities granted to them by Defendants City of Rockford and/or Rockford Department of Public Safety.

150.   At all relevant times and places, Defendants Abbate and Bradley were agents of Defendants City of Rockford and/or Rockford Department of Public Safety.

151.   At all relevant times, Defendants were acting in the course and scope of their employment with Defendants City of Rockford and/or Rockford Department of Public Safety and within

the scope of their authority as law enforcement officers of the Defendant Rockford Department of Public Safety, a division/department of Defendant City of Rockford.

152.  Defendants Abbate and Bradley breached the duties owed to Plaintiff and were grossly negligent as that term is used and defined in MCL 691.1407(2)(c), when they conducted themselves by actions described above, said acts having been committed with reckless disregard for Plaintiff's health, safety, Constitutional, statutory, and common law rights.

153.  Defendants Abbate and Bradley's conduct rose to the level of gross negligence that was the proximate cause of Plaintiff's injury (MCL 691.1407(2)).

154.  Defendants Abbate and Bradley owed Plaintiff a duty to protect and uphold his federal and state constitutional, statutory, and common law rights.

155.  Defendants Abbate and Bradley failed to act in a manner that would protect, uphold, and respect Plaintiff's Constitutional, statutory, and common law rights to:

a)      Be free from unreasonable seizures of his person;

b)      Be free from false stops, seizures, and arrests;

c)      Be free from being physically assaulted and battered;

d)      Due process of law; and,

e)      Other federal and state constitutional, statutory, and common law rights.

156.  Contrary to the duties owed to Plaintiff at the above time and place, Defendants were grossly negligent and breached said duties and violated Plaintiff's federal and state constitutional and statutory rights.

157.  Due to Defendants Abbate and Bradley's gross negligence, they should not be afforded statutory immunity under the Michigan Governmental Tort Liability Act (MCL 691.1407, *et al*.).

158.   As a direct and proximate result of Defendants' gross negligence, Plaintiff was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

159.   As a direct and proximate result of the aforementioned actions and inactions by Defendants, Plaintiff sustained injuries including but not limited to, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, loss of wages, and other damages known and unknown.

**<u>COUNT VIII</u>**
**<u>ASSAULT & BATTERY</u>**
**<u>DEFENDANTS ABBATE AND BRADLEY</u>**

160.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

161.   Defendants Abbate and Bradley committed, or acted in concert to commit, acts which caused the Plaintiff to be apprehensive that Defendants would subject him to an imminent battery and/or intentional invasions of his rights to be free from offensive and harmful contact.

162.   Defendants engaged in conduct that demonstrated that the Defendants had a present ability to subject Plaintiff to an immediate, intentional, offensive and harmful touching.

163.   Plaintiff did not consent to such conduct, which caused injury, damage, loss, and/or harm.

164.   The acts described herein constitute assault and battery, actionable under the laws of the State of Michigan.

165.   Defendants committed, or acted in concert to commit, acts, which resulted in harmful or offensive contact with the Plaintiff's body.

166.   As a direct and proximate result of Defendants' actions, Plaintiff was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

167.   As a direct and proximate result of the aforementioned actions and inactions by Defendants, Plaintiff sustained injuries including but not limited to, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, loss of wages, and other damages known and unknown.

### COUNT IX
### FALSE IMPRISONMENT
### ALL DEFENDANTS

168.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

169.   Defendants intentionally arrested and confined Plaintiff without consent, and without reasonable or probable cause.

170.   Defendant knew, or should have known, they had no lawful authority to detain Plaintiff.

171.   Though Plaintiff was charged criminally, all criminal charges brought against Plaintiff were dropped in their entirety upon review of the dash cam video taken the evening of Plaintiff's unlawful arrest.

172.   Defendants' conduct constituted false imprisonment of Plaintiff.

173.   As a direct and proximate result of Defendants' actions, Plaintiff was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

174.   As a direct and proximate result of the aforementioned actions and inactions by Defendants, Plaintiff sustained injuries including but not limited to, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, loss of wages, and other damages known and unknown.

## DAMAGES

175.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

176.   As a direct and proximate result of Defendants' actions and/or inactions stated above, Plaintiff suffered the following injuries and damages:

a)   Violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of his person;

b)   Violation of the right to Due Process of Law under the Fourteenth Amendment to the United States Constitution;

c)   Violation of his rights under the Michigan Constitution under Article I, § 11 to be free from an unreasonable search and seizure of his person;

d)   Violation of his rights under the Michigan Constitution under Article I, § 17 to due process;

e)   Physical pain and suffering;

f)   Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety, and other;

g)   Lost wages;

h)   Medical expenses;

i)   Expenses related to payment of fines and attorney fees related to the criminal prosecution; and,

j)   Loss of liberty.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Thurman King, respectfully requests this Court and the finder of fact to enter a Judgment in Plaintiff's favor and against Defendants on all counts in an amount

consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award Plaintiff all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive, in whatever amount the Plaintiff is entitled, and all other relief arising out of law, equity and fact, also including but not limited to:

a) Actual and Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, wage loss, expenses related to payment of fines and attorney fees related to the criminal prosecution, mental anguish, anxiety, humiliation and embarrassment, violation of Plaintiff's Constitutional rights, and other damages to be proved;

b) Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c) Reasonable attorney fees, interest and costs; and

d) Equitable or injunctive relief sufficient to protect Plaintiff from any ongoing or future harassment and intimidation from Defendants;

e) Any such other and further relief as the Court deems reasonable, just, and proper.

Respectfully submitted,

Dated: February 21, 2022                    By:    /s/ Stephen R. Drew
                                                   Stephen R. Drew (P24323)
                                                   Adam C. Sturdivant (P72285)
                                                   DREW COOPER & ANDING
                                                   Attorneys for Plaintiff
                                                   80 Ottawa Avenue NW, Suite 200
                                                   Grand Rapids, Michigan  49503
                                                   Phone: (616) 454-8300
                                                   Email: sdrew@dca-lawyers.com
                                                   Email: asturdivant@dca-lawyers.com

## <u>RELIANCE ON JURY DEMAND</u>

Plaintiff, Thurman King, by and through his attorneys, DREW COOPER & ANDING,

relies on the jury demands made in his initial complaint and demands a trial by jury on all existing

and new claims set forth above.

Respectfully submitted,

Dated:  February 21, 2022         By:     /s/ Stephen R. Drew
                                     Stephen R. Drew (P24323)
                                     Adam C. Sturdivant (P72285)
                                     DREW COOPER & ANDING
                                     Attorneys for Plaintiff
                                     Grand Rapids, Michigan  49503
                                     Phone: (616) 454-8300
                                     Email: sdrew@dca-lawyers.com
                                     Email: asturdivant@dca-lawyers.com