***Thurman King v. City of Rockford, et al.***
U.S.D.C. Western District of Michigan Case No. 1:21-cv-259
Honorable Jane M. Beckering

**Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment**

# Exhibit 12

```
 1                     UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF MICHIGAN
 2                            SOUTHERN DIVISION

 3

 4    THURMAN KING,

 5

 6           Plaintiff,

 7    vs.                                      Case No. 1:21-cv-259

 8                                             Hon. Paul L. Maloney

 9    CITY OF ROCKFORD; ROCKFORD

10    DEPARTMENT OF PUBLIC SAFETY;

11    OFFICER ZACHARY ABBATE (individually);

12    and OFFICER JASON BRADLEY (individually),

13

14           Defendants.

15

16

17                     VIDEOTAPED DEPOSITION

18

19    DEPONENT:     ZACHARY ABBATE

20    DATE:         Wednesday, January 5, 2022

21    TIME:         9:06 a.m. EST

22    LOCATION:     Via Zoom videoconference

23    REPORTER:     Elizabeth G. LaBarge, CSR-4467

24    JOB NO:       17021

25
```

```
 1              don't have a recollection of why you turned behind him
 2              at the time?
 3                    MR. CALLAHAN:  Objection, foundation.
 4     A    Can you ask the question again?  Or rephrase it?
 5     BY MR. DREW:
 6     Q    Did you -- when Mr. King's car passed in front of you,
 7          was he doing anything improper?
 8     A    I don't recall if he passed in front of me or not;
 9          however, I observed the license plate light out.
10     Q    You don't recall whether he drove in front of you?
11          Okay.  So it's your testimony --
12                    MR. CALLAHAN:  Objection --
13     BY MR. DREW:
14     Q    When did you --
15                    MR. CALLAHAN:  -- asked and answered.
16     BY MR. DREW:
17     Q    When is it your testimony that you observed his license
18          plate out, light out?
19     A    When I was driving west on West Division.
20     Q    Behind him?
21     A    Behind him.
22     Q    Before he got to the stop sign?
23     A    Correct.
24     Q    You didn't stop him then; did you?
25     A    What's that?
```

| | | |
|---|---|---|
| 1 | | and knowing it was him at that point; is that correct? |
| 2 | A | Absolutely, yeah. |
| 3 | Q | Okay.  It's your testimony you didn't know who he was at |
| 4 | | that point? |
| 5 | A | Right. |
| 6 | Q | Is it your testimony under oath now that he ran through |
| 7 | | the stop sign or did not stop at the stop sign? |
| 8 | A | Did not come to a complete stop, right. |
| 9 | Q | You watched the video? |
| 10 | A | Oh, a long time ago, yeah. |
| 11 | Q | You also watched the video with Lieutenant Sawyer?  Do |
| 12 | | you remember whether you watched it with him or not? |
| 13 | A | I am not sure. |
| 14 | Q | In your recollection of the observation of the video, |
| 15 | | had it been doctored at all to show the car stopping |
| 16 | | when it didn't stop? |
| 17 | A | Had it been doctored?  No. |
| 18 | Q | Right.  Okay. |
| 19 | A | Not to my knowledge. |
| 20 | Q | So to your knowledge, the video from your car was an |
| 21 | | accurate representation of the events of his car coming |
| 22 | | to the stop sign, correct? |
| 23 | A | That's right. |
| 24 | Q | You're aware -- are you aware that the prosecuting |
| 25 | | attorney reviewed the video and indicated to the Chief |

```
 1        evidence whatsoever of him driving erratically or under
 2        the influence, correct?
 3    A   There was no evidence of him driving erratically, right.
 4    Q   He refused at the scene to take a test, so you filled
 5        out a warrant so that he could be blood tested down at
 6        the jail; do you recall that?
 7    A   Right.
 8    Q   What test were you going to give him at the scene that
 9        he refused?
10    A   Can you say that again?
11    Q   Yeah.  What test that -- were you going to give him at
12        the scene that he refused?
13    A   I'm not sure.
14    Q   Well, you filled out an affidavit to force him to have a
15        blood test because he refused a test at the scene, so
16        I'm just -- what test were you going to give him?
17    A   I guess I'm not sure.  Maybe a field sobriety test.  I'm
18        not sure.
19    Q   Well, you never took him at the scene through the field
20        sobriety test, but by that time, he was handcuffed, so I
21        guess there was a reason, but you never smelled any
22        alcohol on his breath; did you?
23    A   Not that I can recall, no.
24            MR. DREW:  Pull up 543, Kathryn.  Enlarge it.  This
25        is Exhibit 10, I think.
```

```
 1             entirely sure that that's the only time he was yelling.
 2    Q    At the end, you say -- go down a little bit:
 3                  "I declare that the statements
 4                   above are true to the best of my
 5                   information and knowledge."
 6             And this document doesn't have your signature on
 7         it, but this would have been a document you signed to
 8         present to the magistrate; is that correct?
 9    A    Yep.
10    Q    You did not -- you did not charge him or give him a
11         ticket for the running through a stop sign, correct?
12    A    I don't -- I don't believe so, no.
13    Q    You didn't give him a ticket for having any license
14         plate light out, correct?
15    A    I don't believe so, no.
16    Q    You're aware that Mr. King and his fiancee, Michelle
17         Cavera, who owned the car, are indicating that they
18         checked it and the light was working?  Maybe you're not
19         aware of that.  Did you as a part of your investigation
20         then take a picture of the car or anything to show that
21         the light wasn't working or do anything to prove that
22         this light wasn't working?
23    A    Other than observing it, no.
24    Q    Other than, yes, observing it and saying that you
25         observed it?
```

| | | |
|---|---|---|
| 1 | A | No. I recall it being on the floor where you would put |
| 2 | | your feet. |
| 3 | Q | Okay. And it -- it was closed, the bottle wasn't open; |
| 4 | | was it? |
| 5 | A | No. |
| 6 | Q | You had -- you at no time smelled alcohol on his breath; |
| 7 | | did you? |
| 8 | A | Not from what I can remember, no. |
| 9 | Q | If you had smelled alcohol on his breath, you would have |
| 10 | | put it in one of these multiple reports, including the |
| 11 | | affidavit that's up there, Exhibit 10; wouldn't you? |
| 12 | A | That I smelled it on his breath?  Yeah. |
| 13 | Q | Well, you put in the affidavit that you smelled an odor |
| 14 | | of marijuana from his breath, see, that's question 2(c) |
| 15 | | of Exhibit 10, correct? |
| 16 | A | That's right. |
| 17 | Q | If you had smelled -- going back to that day and the |
| 18 | | affidavit you filled out that morning, if you had |
| 19 | | smelled alcohol on his breath, you would have put that |
| 20 | | in the affidavit, correct? |
| 21 | A | Correct. |
| 22 | Q | There was no evidence that you saw that evening at all |
| 23 | | that he was operating his vehicle under the influence of |
| 24 | | alcohol or this cognac; was there? |
| 25 | A | I guess I don't know.  I didn't see any erratic driving |

|    |   |                                                                          |
|----|---|--------------------------------------------------------------------------|
| 1  |   | that would point to that, if that's what your question                   |
| 2  |   | is.                                                                      |
| 3  | Q | All right.  And also, you put in the affidavit that he                   |
| 4  |   | refused or you just testified that he refused dexterity                  |
| 5  |   | tests.  Isn't it true, sir, that the part on the camera                  |
| 6  |   | that we could see, there was no time during that time                    |
| 7  |   | that you requested that he do any dexterity tests of                     |
| 8  |   | being under the influence of alcohol; is that correct?                   |
| 9  | A | From the time that you could see it on the film, no.                     |
| 10 | Q | That's correct?                                                          |
| 11 | A | You're correct, yes.                                                     |
| 12 | Q | And even though we couldn't hear what you were saying                    |
| 13 |   | and what he was saying to you until he called out                        |
| 14 |   | "Michelle," even though you couldn't hear that because                   |
| 15 |   | your mic wasn't working, you at no time recall asking                    |
| 16 |   | him while you were on camera view to do dexterity tests; |
| 17 |   | that's correct, isn't it?                                                |
| 18 | A | That's right.                                                            |
| 19 | Q | And when you -- when you decided to escalate and grab                    |
| 20 |   | his -- well, first of all, grabbing his arm was an                       |
| 21 |   | escalation on your part; was it not?                                     |
| 22 | A | By him walking away from me, yes.                                        |
| 23 |   |         MR. CALLAHAN:  Escalation of what?                               |
| 24 | BY MR. DREW:                                                                 |
| 25 | Q | You -- well, you went through this continuum of force.                   |

```
1    State of Michigan          )
2    County of Oakland          )
3              Certificate of Notary Public - Court Reporter
4
5         I certify that this transcript is a complete, true, and
6    correct record of the testimony of the witness held in this
7    case.
8
9         I also certify that prior to taking this deposition, the
10   witness was duly sworn or affirmed to tell the truth.
11
12        I further certify that I am not a relative or an
13   employee of or an attorney for a party; and that I am not
14   financially interested, directly or indirectly, in the
15   matter.
16
17        I hereby set my hand this 13th day of January, 2022.
18
19
20
21                 Elizabeth G. LaBarge
22                 Elizabeth G. LaBarge, CSR-4467
23                 Certified Shorthand Reporter
24                 Notary Public, Wayne County, Michigan
25
```